DANIEL F. RILEY, PROSECUTOR, v. CRUCIBLE STEEL COMPANY OF AMERICA, RESPONDENT.

Submitted October 3, 1944—Decided November 8, 1944.

Before Justices CASE, BODINE and PORTER.

For the prosecutor, *Morris F. Pearlman.*

For the respondent, *Cox & Walburg* (*Arthur F. Mead*).

The opinion of the court was delivered by

CASE, J.  Appellant, the petitioner in a workmen's compensation case, seeks to reverse the judgment of the Hudson Common Pleas and to re-establish the judgment in the Bureau. He suffered a paralytic stroke on February 7th, 1942, while employed by Crucible Steel Company of America, the respondent in the Bureau. The question is whether the respondent employer is liable for the temporary and total permanent disability resulting therefrom.

Petitioner, many years earlier, had contracted syphilis for which he had been treated from time to time through the years but of which he had never been cured. His first day of employment with the respondent was February 7th, 1942. His job there was to be inspector of metal shell casings. He reported for work in season to begin at the appointed morning hour of seven o'clock. He was turned over, for instruction in his duties, to the man whose place he was taking and who was to enter the army that day or the next morning. Three hours later he was found in a state of collapse sitting on a toilet seat in the men's room one flight of stairs up from his place of work. He was taken to a hospital and has been unable to work since. His disability proved to be a paralysis of the left side, variously attributed by the medical witnesses

to a cerebral hemorrhage or a thrombosis. That much is clear.

The burden of proving that the accident arose out of and in the course of the employment was upon the petitioner. *Reis* v. *Breeze Corporations, Inc.,* 129 *N. J. L.* 138, 145. Doubt enters with the petitioner's proofs on that point. The testimony of the petitioner was that shortly, but not immediately, before the sensation of illness came upon him he was engaged in inspecting a tray of casings each of which was supposed to be marked on the end with numbers in yellow chalk; that some of the casings had that marking on the side but not on the end and that he was given a piece of yellow chalk and told to complete the marking in such instances by chalking on the end the mark that was on the side; that the casings weighed from forty to fifty pounds each; that he undertook to pull out one of them from a heap that had eight or nine others on either side and three or four rows above; that it took the petitioner from a half to three-quarters of a minute to pull the casing out; that in so doing he "felt a very sharp, severe pain in the right side" of his head; that he said nothing to anyone about it at the time; that he then proceeded to help his instructor punch numbers into the casings by means of steel dies and a hammer; that not more than ten minutes later petitioner remarked to his instructor that it was a "tough job" and that he was going upstairs to rest a few minutes and that the instructor said, "go ahead;" whereupon petitioner went to the men's room, was presently given aid and was taken to the hospital. The importance of the alleged incident embracing the yellow chalk job, which included the strain of disengaging a heavy casing from a difficult position with the weight of other casings upon it and the consequent pain in the head, is that the testimony of the medical experts upon whom petitioner relies to connect up the paralysis as an accident arising out of the employment is made to depend upon it. That is the alleged unusual strain which, by the hypothetical questions and the answers in response, contributed to the ravages of a pre-existing syphilis to cause the cerebral hemorrhage or the thrombosis, whichever it was, and thus to constitute an industrial accident.

The weight of the testimony is that there was not and because of the nature and characteristics of the materials could not have been any such function as was described by the petitioner; that the casings were metal forgings, cone shaped, open at one end and brought to a point with a finished closed nose at the other; that the metal would not take the chalk marks, and that the ends afforded no place for marking.

There is nothing to indicate that petitioner had related the disputed incident or any part of it to anyone, either a medical expert or otherwise, until he gave his testimony at the hearing. His formal claim for compensation, filed with the Bureau and sworn to by him before his attorney on September 8th, 1942, in response to the question "What was the nature of the accident, and how did it happen?" gave this answer: "Handling buckets of casings and hot forgings." At the hearing he testified that he did not have anything to do with the handling of the buckets. On December 23d, 1942, petitioner was examined by Dr. Dowd (medical witness for respondent at the hearing) and gave his statement to the doctor of what had occurred. Nothing was said by the petitioner to Dr. Dowd about the incident of pulling or trying to pull a shell or casing from a pile of casings and feeling a pain in his head. Dr. Dowd so testifies and petitioner so admits. Petitioner testified that at no time while he was in the men's room did he lose consciousness and that he remembers suggesting to someone there that something had hit him; but he further testified that actually nothing did hit him.

Respondent had such knowledge of petitioner's illness as came to it from the fact that petitioner, while assisting in the punching of numbers in the casings by means of metal dies and a hammer, stated that he would go upstairs and rest for a few minutes and from the fact that a paralysis presently ensued. Beyond those incidents and the filing of the petition and the subsequent examination by Dr. Dowd petitioner never gave notice of any sort. Respondent had no notice of the alleged causative incident upon which petitioner's case hangs and which is in the case under circumstances that arouse grave suspicion concerning its genuineness. The determination in the Pleas was that there was no such operation

as the petitioner sought to describe. We come to the same conclusion. The petitioner did not show by the weight of the testimony that he had suffered injury by accident arising out of and in the course of his employment.

The determination and rule for judgment in the Hudson County Court of Common Pleas will be affirmed, with costs.